Graeter v. The State.

Filed Feb. 9, 1886.

<hr>

No. 12,742.

GRAETER v. THE STATE.

CRIMINAL LAW.—*Indictment.*—*Motion in Arrest.*—On a motion in arrest of judgment, if the indictment is found to contain all the essential elements of a public offence, even though to some extent defectively stated, it will be held sufficient.

SAME.—*Permitting Leased House to be Kept as a House of Ill Fame.*—An indictment which charges that the defendant, at, etc., on, etc., did unlawfully permit a certain frame building, situate on lot No. 41, in the city of V., which he had theretofore let to one A., to be kept as a house of ill fame, and resorted to for the purpose of prostitution, then and there well knowing that it was so kept, etc., is sufficient on a motion in arrest of judgment.

SAME.—*Instruction.*—*Evidence.*—*Reputation of Defendant for Chastity.*—In the trial of a cause wherein the defendant is charged with having permitted a building theretofore let by him to be kept as a house of ill fame and resorted to with his knowledge for the purpose of prostitution, evidence of the reputation of defendant for virtue and chastity is not admissible; but where such evidence has neither been offered nor admitted, and where his reputation has been in no way suggested during the trial, an instruction to the jury, that it was competent for the State to prove the

| | |
|---|---|
| 105 | 271 |
| 124 | 364 |
| 127 | 410 |
| 105 | 271 |
| 136 | 224 |
| 136 | 236 |
| 105 | 271 |
| 138 | 19 |
| 139 | 540 |
| 105 | 271 |
| 140 | 444 |
| 141 | 110 |
| 105 | 271 |
| 159 | 213 |
| 105 | 271 |
| 167 | 182 |

reputation of the defendant for chastity and virtue, is not such an error as would justify a reversal.

· SAME.—*Actual Knowledge of Defendant.*—In such a case an instruction that a landlord could not be convicted of the offence charged without proof that he had knowledge that the house let was kept as a bawdy-house, but that it was not necessary to prove that he had witnessed acts of prostitution in the house, or that he had been personally notified of such acts; that knowledge might be proved by circumstantial evidence, by proof of such facts and circumstances as would justify the jury in coming to the conclusion that he had such knowledge, is not erroneous, the jury having been instructed as to the doctrine of reasonable doubts.

SAME.—*Instruction.—Purpose of Statute.*—In such a case an instruction that "the statute upon which this prosecution is based was enacted for the first time in this State in 1881; prior statutes had proven insufficient to restrain what all good citizens regarded as a growing evil; this statute aims to lessen the evil by interposing a formidable obstacle to the securing of houses and shelter by prostitutes," contains nothing that could have prejudiced the defendant.

SAME.—*Prima Facie Case.— Want of Knowledge.*—Where, in such a case, it is proved by the State that the ill fame of the house existed, and that it was flagrant and notorious, and the other elements of the case are made out, a *prima facie* case is made out, and it is then incumbent on the defendant to show that he had no knowledge, or that the circumstances were such that he may have remained ignorant of the facts, want of knowledge being a fact so peculiarly within his own breast that it must be regarded as an essential element of his defence.

From the Knox Circuit Court.

*O. H. Cobb* and *J. S. Pritchett*, for appellant.

*W. A. Cullop*, Prosecuting Attorney, *G. W. Shaw* and *C. B. Kessinger*, for the State.

MITCHELL, J.—The grand jury of Knox county presented to the court, by formal indictment, that Frederick Graeter did, on a day therein named, unlawfully permit a certain frame building situate on lot numbered forty-one, in the city of Vincennes, which he had theretofore let to one Mollie Avery to be kept as a house of ill fame and resorted to for the purpose of prostitution, then and there well knowing that it was so kept, etc.

After conviction there was a motion to arrest the judgment, on the ground that the facts stated in the indictment did not

constitute a public offence. It is contended that the court erred in overruling this motion. The reasons assigned are that the indictment does not disclose the terms of the letting, the time when the tenancy commenced, nor that the person to whom the building had been theretofore let was at the date of the alleged offence, or within two years prior thereto, the tenant of the defendant. Section 1994, R. S. 1881, provides that, "Whoever keeps a house of ill fame, resorted to for the purpose of prostitution or lewdness; or knowingly lets a house to be so kept; or knowingly permits a house which he has let to be so kept,—shall be fined," etc.

The indictment is predicated on the last clause of the foregoing statute. The offence is described substantially in the terms employed in defining it. As a general rule this is sufficient. State v. Miller, 98 Ind. 70; Betts v. State, 93 Ind. 375. Whether the house was, at the date of the alleged offence, let to and occupied by Mollie Avery, is not stated in the indictment with as much certainty as a strict regard for technical precision might require, on a motion to quash. It is charged, however, that the house had been theretofore let to her, and that subsequent to the letting the defendant had knowingly permitted it to be kept as a house of ill fame. On a motion in arrest, if the indictment is found to contain all the essential elements of a public offence, even though to some extent defectively stated, it will be held sufficient. Greenley v. State, 60 Ind. 141; Lowe v. State, 46 Ind. 305; Shepherd v. State, 64 Ind. 43.

The sixth, seventh and eighth instructions given by the court are complained of. In the sixth, the jury were told that it was not necessary for the State to prove particular acts of prostitution, as having occurred in the house, in order to establish the allegation that it was a house of ill fame. That while such proof was competent, it was also competent, for the purpose of sustaining such allegation, to prove the general reputation of the house, and also of its inmates and

frequenters, male and female, "and of the defendant, for chastity and virtue." The last part of the instruction is especially assailed. If any evidence had been either offered or admitted, upon the subject of the defendant's chastity or virtue, in proof of the allegation referred to, we should have no doubt but that the giving of that part of the instruction quoted, as well as the admission of such evidence, would have been such error as must have resulted in a reversal. It was not proper to admit or to consider evidence of the defendant's reputation for chastity and virtue, in order to establish the allegation that the house was a house of ill fame. No such evidence was offered or admitted, and so far as the record shows the subject of the defendant's reputation was in no manner suggested during the course of the trial except as above stated. We can not, therefore, considering the result arrived at upon the evidence, regard the error as one which could have misled the jury or prejudiced the substantial rights of the defendant. Section 1891, R. S. 1881; *Epps* v. *State,* 102 Ind. 539. That it was competent to consider evidence of general reputation, to establish the fact that the house was kept as a house of ill fame, see *Betts* v. *State, supra.*

The jury were told in the seventh instruction, that a landlord could not be convicted of the offence charged, without proof that he had knowledge that the house let was kept as a bawdy-house, but that it was not necessary to prove that he had witnessed acts of prostitution in the house, or that he had been personally notified of such acts; that knowledge might be proved by circumstantial evidence, by proof of such facts and circumstances as would justify the jury in coming to the conclusion that he had such knowledge.

The appellant insists that the proof must have shown that he had actual knowledge that the house was being kept as a house of ill fame, and that, with such knowledge, he willingly permitted the house to be so kept. If by actual knowledge it is meant that he must have had personal knowl-

edge, from having witnessed acts of prostitution, we do not agree with counsel's contention. The appellant may have had such actual knowledge from facts and circumstances, as required him to expel the occupants of the house. The owner of a house so kept may not shut his eyes to that which is patent to the community around him, and stop his ears from that which has become notorious among his neighbors, and say he has no actual knowledge. To hold that personal knowledge, from having witnessed acts of prostitution, or notice from persons who had witnessed such acts, was required, would be to render the statute practically a dead letter. The jury had been told in the third instruction, that before the defendant could be convicted they must be satisfied beyond a reasonable doubt that he had knowingly permitted the house to be kept by Mollie Avery as a house of ill fame, resorted to for the purpose of prostitution. Considered in connection with the third, the seventh instruction was not erroneous.

The court told the jury that "the statute upon which this prosecution is based was enacted for the first time in this State in 1881. Prior statutes had proven insufficient to restrain what all good citizens regarded as an alarming evil. This statute aims to lessen the evil by interposing a formidable obstacle to the securing of houses and shelter by prostitutes." We are unable to discover anything in this which could have prejudiced the appellant.

The contention of the appellee, that the instructions are not in the record, is not well made. They are properly presented by a bill of exceptions filed under section 1849, R. S. 1881. This latter section appears, through an error, to be cited in *Erlinger* v. *East*, 100 Ind. 434. The section there intended was 629, R. S. 1881.

It is contended with much earnestness that the evidence does not sustain the verdict of the jury. The argument at this point is directed to two propositions: *First.* That there is no evidence that the defendant knew that the house

was being kept as a house of ill fame. *Second.* That the proof does not show that the house was rented to Mollie Avery, and that it was being so kept by her as the tenant of the appellant, and that, therefore, there is a fatal variance. Five witnesses testified on behalf of the State, to the effect that the house had been kept as a house of prostitution by Mollie Avery for a period of from two to three years before the indictment was returned; that at some periods three and four prostitutes at a time were inmates of the house; that it was generally reputed to be a house of prostitution; that the defendant, during all that time lived about one square and a half distant, and in sight of the entrance to the house; that men and lewd women were frequently seen to go in the house, both in the day and night time. One witness testified that, on several occasions, inmates of the house had been arrested; that from two to five men at a time were seen in the house. The defendant did not offer a syllable of testimony of any kind, and in this state of the evidence the jury, under instructions from the court, found him guilty of knowingly permitting the house to be kept as a house of ill fame. That the ill fame of the house existed, and that it was flagrant and notorious, is not and can not be disputed. In such a case, want of knowledge is a fact so peculiarly within the breast of the accused that it must be regarded as an essential element of his defence. *Brow* v. *State*, 103 Ind. 133; *Goetz* v. *State*, 41 Ind. 162; *Farrell* v. *State*, 45 Ind. 371; *Ward* v. *State*, 48 Ind. 289; *Goodwin* v. *Smith*, 72 Ind. 113 (37 Am. R. 144).

When the State proved the fact to exist, and that it was a matter of general repute in the community in which the defendant lived, a *prima facie* case was made. It was then incumbent on the defendant to show that he had no knowledge, or that the circumstances were such that he may have remained ignorant, of the facts.

With regard to the variance suggested, it may be said, the testimony shows that Mollie Avery lived in the house and

was generally recognized as the occupant and proprietress. While it is true, another, whose relations with her are not. satisfactorily established, testified that he habitually paid the rent; he also testified that the defendant told him on one occasion that " he wanted Mollie Avery to give up the house,. as he wanted to remove it." It thus appears that the defendant as well as others recognized her as being in possession. We can not disturb the verdict on account of the amount of the fine assessed.

Judgment affirmed, with costs.

Filed Jan. 29, 1886.