Edward S. PENNINGTON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1080S391.

Supreme Court of Indiana.

Oct. 8, 1981.

Harriette Bailey Conn, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Edward S. Pennington, was found guilty by a jury of failure to appear, Ind.Code § 35–44–3–6 (Burns 1979 Repl.) and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to serve consecutive terms of two and thirty years in the Indiana Department of Correction. In his direct appeal, he presents various issues for our review; our disposition of defendant's appeal, however requires only that the following question be reviewed: whether the evidence is sufficient to support defendant's conviction for failure to appear. The question before us arises in the context of somewhat involved factual circumstances.

In the fall of 1979, defendant was facing charges in Rush Circuit Court for two unrelated crimes he had allegedly committed in that jurisdiction. In one information filed by the state, denominated in the Rush Circuit Court files as "No. CR 78–46," he was charged with attempted theft. In the second information, denominated "No. CR–79–33," he was charged with theft of ten dollars.

Plea negotiations between the state and defendant culminated in a plea agreement between the parties. By written agreement, defendant stipulated he would plead guilty to the charge of attempted theft detailed in cause CR–78–46. In return, the state stipulated to the recommendation that defendant serve an executed sentence of four years, that his bond be reduced, and

that the unrelated ten-dollar theft charge in cause CR 79–33 would be dismissed. The plea agreement reads in relevant part:

> "(3) The defendant agrees to plead guilty to the following charge or charges: Crime of attempted theft, Count I of the Information herein.
>
> "(4) The State agrees to the following recommendation to the Court for sentencing: An executed sentence of four (4) years, with credit for time served, & to recommend that the bond be reduced to $5,000.00.
>
> "(5) The State will dismiss the following charges: Count II of the Information and will also dismiss CR79–33."

The parties also orally agreed that defendant would serve as a drug informant, a stipulation which, for obvious reasons, was not recorded in the written plea agreement.

On October 17, 1979, defendant appeared in Rush Circuit Court and entered his guilty plea to the charge of attempted theft in cause CR 78–46. The agreement of the parties, including the stipulation that cause CR 79–33 would be dismissed, was submitted to the court as part and parcel of the plea. No action was taken by the court with respect to the guilty plea or the terms of the parties' agreement, with the exception that defendant was released on his own recognizance that day.

On November 19, 1979, still prior to the court's ruling on defendant's guilty plea and concomitant plea agreement, the trial court entered the following order in cause CR 79–33, which was subject to dismissal pursuant to the plea agreement pending before the court:

> "The Court now being advised that the defendant has apparently fled the jurisdiction of the Court and has had additional felony criminal charges filed against him now reinstates the defendant's bond at the previously fixed amount of $30,000.00 and orders rearrest warrant with said bond issued. Defendant is further, pursuant to his release on his own recognizance, ordered to appear in open Court at 10:00 a.m. on November 29, 1979."

The record indicates the "additional felony criminal charge" filed against defendant was a charge of battery. A copy of the court's order quoted above was mailed to defendant's counsel, Ronald Wilson.

Two days later, defendant called the Rush County Sheriff's Department from Tampa, Florida. Defendant identified himself as "Eddie Pennington" to Deputy Sheriff William Todd, who recognized the voice as defendant's from previous conversations. Todd erroneously told defendant that a disorderly conduct charge had been filed against him and also informed him of the hearing scheduled in cause CR 79–33: "Eddie, you have to be in Court on the 29th. You have an appearance on that date." According to Todd, defendant responded: "I talked to my attorney. I'm gonna have him git that continued for me."

On November 29, defendant did not appear at the hearing. Eight days later, the state filed the charges at issue here.

The crime of failure to appear, as defined in Ind.Code § 35–44–3–6, *supra*, is an offense new to this jurisdiction which took effect with the revised criminal code October 1, 1977. The statute reads in its entirety:

> "Sec. 6. (a) *A person, who having been released from lawful detention on condition that he appear at a specified time and place in connection with a charge of a crime, intentionally fails to appear at that time and place commits failure to appear*, a Class A misdemeanor. However, the offense is a Class D felony if the charge was a felony charge.
>
> "(b) It is no defense that the accused person was not convicted of the crime with which he was originally charged.
>
> "(c) This section does not apply to obligations to appear incident to release under suspended sentence or on probation or parole." [Emphasis added.]

Outlined in subsection "(a)" above, as emphasized, are the elements of the crime of failure to appear: (1) a person released from lawful detention; (2) *on condition he appear at a specific time and place*; (3) in connection with a charge of a crime; (4)

who intentionally fails to appear at the time and place specified. *See generally, Haskett v. State,* (1979) Ind.App., 386 N.E.2d 1012; West's Ann.Ind.Code § 35–44–3–6 Commentary (1978).

As defendant has maintained, there is absolutely no evidence to indicate that when defendant was released from detention on October 17, 1979, he was informed his release was conditioned upon his later appearance in cause CR 79–33 *at a specified time and place.* The state, which of course held the burden of proving defendant's conduct satisfied the elements of Ind.Code § 35–44–3–6, *supra,* offered no records of transcript of the October 17 hearing which revealed any specific future required appearance in either cause CR 78–46 or CR 79–33. Nor do the records of his release from lawful detention reveal he was advised of his duty to appear in the event a future hearing was scheduled in either cause CR 78–46 or CR 79–33.

In its brief, the state has not addressed defendant's contention that the court's order of November 19, 1979, requiring his appearance in cause CR 79–33 does not fall within the purview of the statute. Rather, the state has asserted that the dispositive question is whether the evidence was sufficient to show defendant had actual or constructive knowledge of the court's *ex parte* order entered thirty-one days after his release.

■ It is a cardinal rule of criminal justice, however, that penal statutes are to be strictly construed against the state and that ambiguities therein are to be resolved in favor of the accused. *Utley v. State,* (1972) 258 Ind. 443, 281 N.E.2d 888; *Coleman v. State,* (1970) 253 Ind. 627, 256 N.E.2d 389; *Zwick v. State,* (1968) 250 Ind. 302, 236 N.E.2d 26; *State v. Gilbert,* (1966) 247 Ind. 544, 219 N.E.2d 892; *Hutcherson v. State,* (1978) Ind.App., 382 N.E.2d 983; *Rose v. State,* (1976) 168 Ind.App. 674, 345 N.E.2d 257. The obvious purpose of the language of the statute is to thwart the intentional frustration of the administration of criminal justice. It perhaps could arguably be said the circumstances present here fall within the ambit of conduct contemplated by the legislature in its enactment of Ind. Code § 35–44–3–6, *supra. See, e.g., Murray v. State,* (1957) 236 Ind. 688, 143 N.E.2d 290.

Yet the invocation of criminal penalties on the basis that the spirit, although not the letter, of a penal statute has been violated is a path our courts have only rarely tread. *See, e.g., Cape v. State,* (1980) Ind., 400 N.E.2d 161; *State v. Bigbee,* (1973) 260 Ind. 90, 292 N.E.2d 609. This jurisdiction's virtually unwavering adherence to the requirement that both the letter and spirit of a statute must be violated eliminates the spectre of criminal laws subjectively applied or unwittingly violated. Our adherence to the rule of strict construction is demanded even though it might be argued the legislature's statutory proscription should have been more comprehensive. *Kelley v. State,* (1954) 233 Ind. 294, 119 N.E.2d 322; *Loftus v. State,* (1944) 222 Ind. 139, 52 N.E.2d 488.

■ The circumstances present here point up the wisdom of the rule. Defendant, an illiterate with a third grade education, maintained steadfastly throughout the proceedings below that it was his understanding the charges in cause CR 79–33 were to be dismissed. During plea negotiations, he had been told by the state he would not have to serve any time on charge CR 79–33. By the written plea agreement, the state stipulated that cause CR 79–33 would be dismissed. And, ironically, the charge in CR 79–33, for which defendant was found guilty of failing to appear, was ultimately dismissed by the state, as per the terms of the plea agreement.

Whether defendant had knowledge of the judge's *ex parte* order entered thirty-one days after his release, his confusion over the status of cause CR 79–33 is not without support in fact. The statutory definition of the crime of failure to appear removes from the realm of conjecture the question whether any defendant *intended* to fail to appear; by imposing the requirement that a defendant be advised at the time of release that he must appear at a specified time and place, the legislature wisely sought to insure that the imposition of the crime's penalties

would not follow from a misunderstanding such as that which defendant claims here.

Here, defendant's conviction for failure to appear not only earned him two years' imprisonment, but also served as the third and underlying felony for the imposition of the thirty years' sentence accorded him as an habitual offender. While our criminal code permits the "felony" defined in Ind. Code § 35–44–3–6, *supra*, to serve as a "felony" for purposes of the habitual criminal statute, Ind.Code § 35–50–2–8, *supra*, that fact in turn militates against the invocation of the "spirit" of the failure to appear statute. This court has emphasized that when a sentence highly penal in character follows from the application of a statute, it should be invoked only where conduct violates both the letter and spirit of the proscription. *Milk Control Board v. Pursifull*, (1941) 219 Ind. 396, 38 N.E.2d 246; *Dowd v. Sullivan*, (1940) 217 Ind. 196, 27 N.E.2d 82; *Manners v. State*, (1936) 210 Ind. 648, 5 N.E.2d 300.

The unambiguous language of Ind.Code § 35–44–3–6, *supra*, clearly states that in order to commit the crime of failure to appear, a defendant must have failed to appear at a time and place which was specified to him on his release from lawful detention. The state wholly failed to prove that these requirements were met in the instant case; accordingly the evidence is insufficient to support defendant's conviction for the crime of failure to appear.

To be sure, a certain frustration of the administration of criminal justice may have been present here. While defendant's conduct may have violated the terms of his release on recognizance or constituted contempt, the state failed to satisfy its burden to show his actions violated the specific requirements of Ind.Code § 35–44–3–6, *supra*.

Inasmuch as defendant's conviction for failure to appear formed the basis for the determination that defendant was an habitual offender, that conviction and sentence thereon must also fall. Without the former, the latter cannot stand. *Rodgers v. State*, (1981) Ind., 422 N.E.2d 1211.

For all the foregoing reasons, the judgment of the trial court must be reversed and vacated.

Reversed and vacated.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents.