**1306**

Lance C. Parrish, Parrish Law Office, Fairbanks, for appellant.

James P. Doogan, Jr., Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Public Defender Agency as amicus curiae.

Susan E. **DOWNIE, Assistant Public Defender, Appellant,**

v.

**SUPERIOR COURT, Appellee.**

**No. A–5611.**

Court of Appeals of Alaska.

Jan. 26, 1995.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

Assistant Public Defender Susan E. Downie appeals an order of the superior court holding her in contempt of court for refusing to testify at a grand jury hearing. We affirm the superior court's order.

This case presents the question of whether a defense attorney may be compelled to testi-

fy concerning whether she informed her client of the client's trial date. These are the underlying facts:

In 1994, the Public Defender Agency was appointed to represent a man named Warren Strickland who was accused of kidnapping and assault in *State v. Strickland*, case number 4FA–94–1396 CR. Susan Downie was the assistant public defender assigned to Strickland's case. Unable to secure bail release, Strickland was in custody at the Fairbanks Correctional Center awaiting trial.

The case was initially set for trial in open court; Strickland was present and heard the announced trial date. But on May 16, 1994, the defense peremptorily challenged the trial judge. A new judge was assigned, and Strickland's trial was rescheduled for the week of August 22, 1994. The court sent written notification to the attorneys, apprising them of the new judicial assignment and of the new trial date.

Strickland appeared in court on three subsequent occasions (hearings in which he sought modifications of his bail conditions so that he might secure his pre-trial release). However, in none of these appearances was Strickland's trial date announced, confirmed, or otherwise referred to. Moreover, there was no indication that Strickland ever received notification of the new trial date through jail personnel.

The superior court issued an order allowing Strickland to be released daily from the Fairbanks Correctional Center so that he could attend work. On July 2, 1994, Strickland failed to return to the Correctional Center at the end of the day. He remained a fugitive throughout the rest of the summer, and he failed to attend his trial on August 22, 1994. Strickland was ultimately arrested in Texas on October 24, 1994; the State initiated extradition proceedings to secure his return to Alaska. The State also began grand jury proceedings against Strickland for failure to appear, AS 12.30.060(1).

Because Strickland was apparently never apprised of his August 22, 1994 trial date in open court, the State asked the superior court to issue a subpoena to Downie (Strickland's attorney), compelling her to testify as to whether she informed Strickland of the revised trial date. *See* Alaska Professional Conduct Rule 3.8(f).[1] Downie secured a private attorney and opposed the State's request for the subpoena. Strickland (now represented by the Office of Public Advocacy) also opposed the State's request.

Following a hearing, Superior Court Judge Richard D. Savell granted the State's request and issued a subpoena compelling Downie's attendance at the grand jury. Judge Savell found that Downie's testimony as to whether she informed Strickland of the revised trial date would not reveal a "confidential communication" within the meaning of Alaska Evidence Rule 503, and that therefore Downie's testimony on this subject was not protected by the attorney-client privilege. Judge Savell also found that, because Strickland was never apprised of the revised trial date in open court, Downie was the only source of this needed information.

After Judge Savell issued this decision, Downie appeared before the grand jury. However, she refused to answer questions relating to whether she had informed Strickland of the revised trial date.[2] Because of this refusal to testify, the State asked the

1. Under Alaska Professional Conduct Rule 3.8(f), a prosecutor shall not:

   subpoena a lawyer in a grand jury … proceeding to present evidence about a past or present client unless:
   (1) the prosecutor reasonably believes:
   (i) the information sought is not protected from disclosure by any applicable privilege;
   (ii) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; [and]

   (iii) there is no other feasible alternative to obtain the information; and
   (2) the prosecutor obtains prior judicial approval after an opportunity for an adversarial proceeding.

2. According to Downie's brief to this court, she declined to answer two questions at grand jury: (1) whether she had transmitted to Strickland a physical copy of the superior court's order of May 23, 1994 (the order rescheduling the trial),

superior court to hold her in contempt. Downie again argued that the requested testimony would violate Strickland's attorney-client privilege. Judge Savell reaffirmed his earlier ruling that the contemplated testimony would not violate the attorney-client privilege.

When Downie indicated that, despite Judge Savell's ruling, she would persist in refusing to testify, Judge Savell held her in contempt of court. He directed Downie to pay a fine of $100 for each day on which she refused to testify. Downie now appeals the superior court's order holding her in contempt. *See Surina v. Buckalew*, 629 P.2d 969, 972 (Alaska 1981) (a non-party may appeal a contempt order, whether the contempt is civil or criminal). We stayed the operation of the contempt order pending resolution of this appeal.

As Judge Savell noted in his order, and as Downie concedes on appeal, the case law on this subject uniformly holds that the attorney-client privilege does not bar an attorney from testifying as to whether he or she informed a client of a court date. *See People v. Williamson*, 839 P.2d 519, 520 (Colo.App. 1992); *State v. Breazeale*, 11 Kan.App.2d 103, 713 P.2d 973, 975–76 (1986); *State v. Ogle*, 297 Or. 84, 682 P.2d 267, 268–271 (1984); *In re Grand Jury Proceedings at Des Moines, Iowa*, 568 F.2d 555, 557 (8th Cir.1977), *cert. denied, Black Horse v. United States*, 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Freeman*, 519 F.2d 67, 68–69 (9th Cir.1975); *United States v. Hall*, 346 F.2d 875, 882 (2nd Cir.1965), *cert. denied*, 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965); *United States v. Woodruff*, 383 F.Supp. 696, 698 (E.D.Pa.1974). *See also United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir.1969),

*cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969).

The rationale of these decisions is that the attorney-client privilege protects confidences between attorney and client imparted for the purpose of securing legal advice or representation, but the privilege does not cover an attorney's act of conveying to the client a third-party's communication. "[When] the attorney is merely acting as a conduit for information, i.e., as a messenger, the privilege is inapplicable." Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, *Federal Rules of Evidence Manual* (6th ed. 1994), Vol. 2, p. 595. *See In re Grand Jury Testimony of Attorney X*, 621 F.Supp. 590 (E.D.N.Y.1985) (Information concerning a pending grand jury investigation was given to an attorney by a third party; the attorney relayed this information to his client. Held: the attorney's communication to the client was not privileged because the attorney, in conveying this information, was not acting as a legal advisor but rather was acting as a conduit of information.)

As the Oregon Court of Appeals stated in *State v. Bilton*, 36 Or.App. 513, 585 P.2d 50, 52 (1978), "[T]he date set for trial is a matter of public record and cannot conceivably be considered confidential." And, as the authorities cited above demonstrate, when an attorney conveys this public information to a client, the fact of the communication has never been deemed protected by the attorney-client privilege.

On appeal, Downie admits that all the case law is against her, and she implicitly concedes that Alaska Evidence Rule 503, as written, would not cover her act of conveying the revised trial date to Strickland.[3] However, Downie argues that the scope of the

---

and (2) whether she had, in any fashion, communicated the substance of that order to Strickland.

**3.** In one sentence of her brief, Downie notes the only significant countervailing opinion: the dissent in *State v. Ogle*, 297 Or. 84, 682 P.2d 267, 275–283 (1984). The dissenters in *Ogle* conceded that the attorney-client privilege has traditionally been interpreted not to cover an attorney's communication of a court date to a client. The dissenters argued, however, that by enacting

Oregon Evidence Code § 503 (which has essentially the same wording as Alaska Evidence Rule 503), the Oregon Legislature, perhaps unintentionally, changed the traditional scope of the privilege, broadening it to include such communications. *Ogle*, 682 P.2d at 283.

Because the aim of statutory construction is to ascertain and give effect to legislative intent, we have significant reservations about the *Ogle* dissent's apparent willingness to "construe" Ore-

privilege created by Evidence Rule 503 must be re-evaluated in light of the Alaska Supreme Court's 1993 promulgation of the Alaska Rules of Professional Conduct, and especially Alaska Professional Conduct Rule 1.6.

■ Professional Conduct Rule 1.6(a) directs an attorney "not [to] reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b) [of this rule] or in Rule 3.3(a)(2)". Downie suggests that the obligation of confidentiality imposed by Professional Conduct Rule 1.6(a) expands the attorney-client privilege codified in Evidence Rule 503.

However, the Commentary to Professional Conduct Rule 1.6(a) states just the opposite. This commentary declares that, while both the law of evidence and the law of professional conduct protect the confidences of clients, these two bodies of law are distinct and they apply in separate, discrete situations:

> The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. *The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.* The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the rules of professional conduct *or other law.*

Commentary, Alaska Professional Conduct Rule 1.6, general "Comment" section, paragraph 5 (emphasis added). A later portion of the same commentary describes the relationship between Professional Conduct Rule 1.6(a) and the attorney-client privilege (whatever its contours in the jurisdiction in which the lawyer is called as a witness). The commentary suggests that, under Professional Conduct Rule 1.6(a), it is a lawyer's obligation to invoke the privilege if (1) the lawyer is called to testify concerning matters relating to the representation *and* (2) the attorney-client privilege is applicable. In the final analysis, however, the lawyer's obligation to testify is governed by the attorney-client privilege as defined in that jurisdiction's law of evidence:

> The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, Rule 1.6(a) requires the lawyer to invoke the privilege when it is applicable. [But the] lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.

Commentary, Alaska Professional Conduct Rule 1.6, section titled "Disclosures Otherwise Required or Authorized", paragraph 1.

For these reasons, we reject Downie's suggestion that the scope of the attorney-client evidentiary privilege has been altered by Professional Conduct Rule 1.6. Although an attorney who is called to testify against a client may have an ethical obligation to withdraw from further representation of that client, the attorney's obligation to testify is governed by the Evidence Rules.

gon's evidence code irrespective of the Oregon Legislature's intent. Be that as it may, the Commentary to Alaska Evidence Rule 503(b) indicates that Alaska's current rule regarding the attorney-client privilege was not intended to alter the scope of the privilege, but rather was intended to re-enact the pre-existing privilege "in ac-

cord with the Alaska rules on this subject that are superseded by [Evidence Rule 503]: [Civil] Rule 43(h)(2) ... and [Criminal] Rule 26(b)(3)".

For the wording of former Criminal Rule 26(b)(3), see *Houston v. State,* 602 P.2d 784, 790 n. 9 (Alaska 1979).

Both Downie and the Public Defender Agency (which has filed a brief as amicus curiae) argue that assistant public defenders must often battle not only the government's case but also their own clients' distrust. They point out that indigent defendants frequently enter the attorney-client relationship with the suspicion that any defense attorney who is a salaried employee of the government can not truly be a loyal and effective advocate on their behalf. Downie and the Public Defender Agency argue that this perception of divided loyalties can only be worsened if defense attorneys are forced to testify against former clients in situations like Downie's. For this reason, Downie and the Agency ask this court to construe the attorney-client privilege more broadly for defendants who are represented by court-appointed attorneys.

This court is mindful of the difficulty encountered by assistant public defenders and assistant public advocates when their clients view them as agents of the government. But we can not adopt a rule of law that creates one rule of evidence for indigent defendants and another rule of evidence for defendants who hire their own attorneys.

For these reasons, the contempt order issued by the superior court is AFFIRMED.

Notwithstanding the normal time limits specified in Appellate Rules 507(b) and 512(a), our previously-entered stay of the superior court's order is dissolved effective 12:00 noon, Monday, January 30, 1995, and this opinion will take effect at that time unless otherwise ordered by the supreme court.

Pursuant to Appellate Rule 521, and notwithstanding the time limit specified in Appellate Rule 303(a)(1), any petition for hearing from this decision must be filed by 12:00 noon, Monday, January 30, 1995, unless otherwise ordered by the supreme court.